# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DANTONIUS M. OWENS, )
)
    Plaintiff, )
)
v. ) Case No. CV414-212
)
BARBARA PRINCE, GLENDEN )
BIRDDELL, LAWRENCE MANKER, )
and JACK KOON, )
)
    Defendants. )

## ORDER

Proceeding *pro se*, Dantonius M. Owens brings this 42 U.S.C. § 1983 action against four employees of Coastal State Prison. He alleges that prison guard Barbara Prince sexually assaulted him, while the remaining defendants either actively participated in the assault (Glenden Birddell and Lawrence Manker), or retaliated against Owens for filing a grievance about the incident (Jack Koon). *See* doc. 15 at 5-9.

## I. BACKGROUND

The undersigned originally recommended dismissal because Owens filed suit well outside the two year statute of limitations for § 1983 claims

in Georgia (he filed this case in September 2014, while the sexual assault occurred in 2009). *See* doc. 8 at 3 (quoting *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986)) ("[T]he proper limitations period for all section 1983 claims in Georgia is the two-year period set forth in O.C.G.A. § 9-3-33 for personal injuries."). After Owens objected (doc. 13), claiming that the Georgia Department of Corrections (GDOC) caused his filing delay by dragging its feet in addressing Owens' many internal grievances, the district judge declined to adopt the dismissal recommendation and instead gave Owens additional time to correct pleading deficiencies. Doc. 14. Owens timely filed the complaint that the Court now screens pursuant to 28 U.S.C. § 1915A to determine whether he has stated a cognizable claim for relief.[1]

---

[1] Courts must dismiss prisoner actions against government entities or officials that are frivolous or malicious, fail to state a claim for relief, or seek damages from a defendant immune from such relief. § 1915A; *see* 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"); 28 U.S.C. § 1915(e)(2)(B) (imposing the same dismissal obligation as to an action filed *in forma pauperis* by any "person," including a "prisoner," regardless of the defendant's identity or the nature of the cause of action).

Owens claims[2] that "[o]n December 16, 2009, at Coastal . . . Officer Barbara Prince . . . instructed Mr. Owens to allow her to search him." Doc. 15 at 5. Owens notified Sgt. Birddell because he "had already filed a complaint" against Prince. Birddell instructed Owens to allow Prince to search him and Owens complied. *Id.* Plaintiff's allegations, in raw, unedited form:

> Prince started her pat search with rubbing up Mr. Owens thigh to his privet area. She then grabbed a handful of Mr. Owens privet, and continued to caress Mr. Owens genatal area until Mr. Owens became very uncomfortable. Mr. Owens asked Officer Prince to stop and then backed away from Officer Prince on going touching of his genatals.
>
> Officer Prince . . . then called Sgt. Birddell over telling her how Mr. Owens won't let her touch him. Sgt. Birddell placed Mr. Owens in handcuffs. Officer Prince and Sgt. Birddell escorted Mr. Owens to the isolation building. . . . Doing the time Mr. Owens was being escorted to isolation Sgt. Birddell and Officer Prince called Mr. Owens gay and made comments as to Mr. Owens thinks he's to damn good to be touched.
>
> When Mr. Owens got to [isolation], Lt. Lawrence Manker was standing there. . . . Lt. Manker joined in calling Mr. Owens gay and stated he was going to teach Mr. Owens a lesson. . . . Lt. Manker [then] choked Mr. Owens while he was in handcuffs to a point where Mr. Owens begin to blackout. Lt. Manker then forced Mr. Owens to get naked in front of Sgt. Birddell and Officer Prince. . . . Mr. Owens

---

[2] The Court presents the facts as if the allegations in the complaint are true. *See Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).

> was then forced to bend over and grab his butt and spread it wide
> open. He was told to hold it that way while Lt. Manker, Sgt.
> Birddell, and Officer Prince look onto him making jokes. Once they
> were done, Lt. Manker picked up Mr. Owens clothes and took them
> with him. Mr. Owens was forced to be naked until the next shift
> change.

*Id.* at 6.

Three days later, after Owens filed a formal complaint against the officers, Birddell entered his building and verbally threatened Owens. *Id.* at 7. "She took Mr. Owens into the shower area of the dorm and made him get naked again. . . . Once she was done stripping Mr. Owens, she placed him in handcuffs and escorted" him to segregation, ostensibly because Owens sexually assaulted Birddell and two officers assisting her. *Id.*

On January 13, 2010, Owens had a disciplinary hearing at which the hearing officers watched a video of Prince's inappropriate "search." *Id.* at 7-8. The officers informed Owens that "for the sake of everybody we [are] going to say Mr. Owens brought all this on to himself," and "that if Mr. Owens wanted to get out of lockdown he will agree." *Id.* at 8. Owens was then given "7 days isol. probated for 60 days with the understanding that

Mr. Owens was not to be around any building Officer Prince is working . . . and she will be advised to stay away from Mr. Owens." *Id.*

Owens "continued to push for some justice." *Id.* In response, "the warden of Coastal [Jack Koon] . . . told Mr. Owens that he was going to insure that Mr. Owens would die in prison because Mr. Owens filed his complaint of sexual abuse." *Id.* After being transferred to the Chatham County jail for a court date, Owens complained to that facility's investigator about his treatment at Coastal. *Id.* That attempt to "push for justice" fizzled too. In total, Owens says he "has filed over (8) eight complaints concerning" his assault by Officer Prince. *Id.* at 9.

In addition to his own complaints, Owens' family emailed the GDOC Ombudsman in February 2011, May 2011, and May 2013 inquiring about why nothing had been done about the sexual harassment Owens suffered. *See* doc. 13 at 6-10. Twice the Ombudsman responded that he or she could not locate any grievances under Owens' name related to sexual assault. *Id.* at 6, 8. Ten days after the most recent Ombudsman email, Owens filed another grievance. *Id.* at 8 (email sent May 10, 2013, formal grievance filed May 20, 2013). Owens says that, finally, in 2014, the GDOC "stated

they will not respond or resolve any of the complaints filed and that any investigation of the complaints are now over." *Id.* at 3.

## II. ANALYSIS

Taking all of Owens' allegations as true, *see supra* n. 2, and in light of his claim that he filed so long after the 2009 assault only because the GDOC dragged its feet in addressing his complaints,[3] dismissal for failure to exhaust administrative remedies is not proper at this stage.[4] Still, the

---

[3] Owens brought suit approximately five years after the alleged sexual assault. The statute of limitations is two years and absent some sort of tolling mechanism his claims still fail for that reason. The Prison Litigation Reform Act ("PLRA") does not provide for statutory tolling. And no Georgia court has held that the limitations period for personal injury claims can be equitably tolled while a prisoner exhausts administrative remedies.

This Court has, however. *See Watkins v. Haynes*, 2013 WL 1289312 at * 8 (S.D. Ga. Mar. 27, 2013) ("Applying the rationale from [relevant Georgia] cases . . . this Court holds that the statute of limitations was tolled while Plaintiff complied with the PLRA by pursuing possible administrative remedies prior to filing suit."). And if tolling occurs while a prisoner tries to exhaust, then arguably it likewise occurs if the state, by purposefully ignoring or delaying decision on administrative applications for redress, causes the limitations period to expire.

That's precisely what Owens alleges occurred here. Specifically, he says that he tried to complain internally from December 20, 2009 until at least May 20, 2013 and that it wasn't until 2014, after years of refusing to do anything (including follow its own procedures by actually deciding grievances), that the GDOC finally told him they were done investigating. Doc. 15 at 3, 6-9. Since the two year clock was tolled from December 20, 2009 until sometime in 2014, his claims surmount the time bar that the Court previously found to apply, since he filed this action on September 25, 2014. Doc. 1.

[4] Under the PLRA exhaustion provision, a prisoner must exhaust all available

administrative remedies before filing an action that challenges the conditions of his confinement. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted."). Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285–86 (11th Cir. 1999); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA.").

Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id.* at 89-91 (citation omitted). Thus, if an inmate has filed an "untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83-84; *see also Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006) (proper exhaustion requires filing grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005). In Georgia, "proper exhaustion" means that prisoners are required to complete a three step grievance process, consisting of an informal grievance, a formal grievance, and an appeal, before filing suit in federal court. *Helton v. Burks*, 2012 WL 6097036 at * 2 (M.D. Ga. May 4, 2012) (citing Ga. Dep't of Corr. SOP IIB05–001 § VI).

Owens' allegations are, on preliminary review at least, sufficient to satisfy the exhaustion requirement. He alleges that (1) he complained repeatedly (8+ times) about Officer Prince's assault; (2) his family complained on his behalf; (3) the GDOC both did nothing in response and actively short-circuited formal investigations; and (4) he was finally informed in 2014, five years after the incident complained of, that "any investigation" was "now over." Doc. 15 at 3. That's sufficient at this stage, particularly since Owens' core exhaustion-related allegation is that the GDOC purposely failed to respond to, much less investigate, his attempts to utilize the prison grievance system. *See Woodford*, 548 U.S. at 103-04 (Breyer, J., concurring) (suggesting that PLRA's "proper exhaustion" requirement is subject to "well-established exceptions" such as "unavailable administrative remedies"); *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (recognizing that "the behavior of [a] defendant[] may render administrative remedies unavailable," and thus PLRA's exhaustion requirement inapplicable); *Hall v. Leavins*, 2009 WL 563877 at *5-6 (N.D. Fla. Mar. 4, 2009) (noting that the Eleventh Circuit has "not decided . . .

Court must evaluate whether Owens' allegations state a claim for relief. *See* 28 U.S.C. § 1915A (on preliminary review, courts must dismiss any prisoner complaint against governmental officials that fails to state a claim for relief). They do.

Owens has "a prisoner's constitutional right to bodily privacy." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) (citing *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir.1993)). Although the right is "very narrow," a person's "special sense of privacy in their genitals" animates that right where their genitals are involuntarily exposed to "people of the other sex." *Id.* at 1110-1111. Boxer X, for example, stated a claim under § 1983 by alleging that "Harris, a female prison guard, solicited [him] to masturbate for her viewing." *Id.* at 1111.

The Court sees little to no daylight between Owens' allegations and those in *Boxer X*. Prince molested Owens under the guise of a search.

---

how much less than perfect compliance with administrative remedies is enough to constitute [PLRA] exhaustion," but nevertheless concluding that plaintiff exhausted available remedies where he placed final appeal of disciplinary denial of grievance in mail system, but grievance was never delivered to the proper party and thus never addressed). If, however, the GDOC moves to dismiss and puts forward proof showing that, even assuming Owens' allegations to be true, he failed to exhaust and the GDOC did not inhibit his efforts to do so, the PLRA obligates the Court to dismiss his claims. *See Turner v. Burnside*, 542 F.3d 1077, 1082 (11th Cir. 2008); *Harris*, 190 F.3d at 1285-86. If the GDOC wishes to do so, it must file its motion within 21 days after the date of service of this Order. This claim, after all, has been delayed long enough.

Then she, Birddell, and Manker forced him to "bend over and grab his butt and spread it wide open" while they laughed at him and called him "gay." Doc. 15 at 6. They then left him naked in a cell for hours for any and all to see for no apparent reason. *Id.* That rises to a *Boxer X* level privacy violation. Hence, Owens has stated a bodily privacy claim against Prince, Birddell, and Manker (but not Koon).

Severe sexual abuse of a prisoner can also violate the Eighth Amendment's proscription of cruel and unusual punishment. *See Boxer X*, 437 F.3d at 1111 (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

> '[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.' *Boddie [v. Schnieder]*, 105 F.3d at 861 [(2d Cir. 1997)] (citation and quotation omitted). Following *Boddie*, we conclude that there is an objective component of the inquiry, which requires that the injury be 'objectively, sufficiently serious,' and a subjective component, which requires the prison official have a 'sufficiently culpable state of mind.' *See id.* at 861 (citing *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977). However, under our circuit precedent about the nature of actionable injuries under the Eighth Amendment, an injury can be 'objectively, sufficiently serious' only if there is more than *de minimis* injury. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).

*Id.* "The culpable state of mind of the corrections officer . . . may be inferred from the act of sexual abuse, but 'isolated episodes of harassment

and touching' do not meet the" objectively serious component. *Parker v. Singletary*, 2011 WL 720065 at * 2 (N.D. Fla. Jan. 26, 2011) (citing *Boxer X*, 437 F.3d at 1111). As the *Parker* court explained:

> Cases where the injury requirement has been met involve some type of intrusive sexual contact, acts beyond mere touching, and allegations of pain.[5] Otherwise, courts have found no constitutional violation. For example, the court in *Boddie* found that the inmate failed to state an Eighth Amendment violation, where he did not allege any pain or injury, but complained about sexual comments by a female officer, who also pressed herself up against him in a sexual manner. Likewise, in *Boxer [X]*, the Eleventh Circuit found that an inmate forced to masturbate in front of a female officer by threat of reprisal suffered only a *de minimis* injury, which did not violate the Eighth Amendment. . . . Other cases have held that one incident of non-violent harassment alone was not sufficient to meet the cruel and unusual punishment standard.[6]

*Id.* (footnotes in original, quotes omitted).

Owens' sexual assault allegations fail. He complains of "mere touching" without any associated pain (though plenty of humiliation).

---

[5] *See, e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000) (demand for oral sex accompanied by grabbing and pushing inmate up against bars); *Smith v. Cochran*, 339 F.3d 1205, 1208 (10th Cir. 2003) (forced oral sex and sexual intercourse); *Little v. Walker*, 552 F.2d 193, 197 (7th Cir. 1977) (rape); *Styles v. McGinnis*, 2001 WL 1667273 at * 2 (6th Cir. Dec. 26, 2001) (forced rectal examination); *Liner v. Goord*, 196 F.3d 132, 135 (2nd Cir. 1999) (intrusive body cavity search).

[6] *See, e.g.*, *Marino v. Commissioner*, 2010 WL 2731791 at * 10 (D. Me. June 30, 2010) (inmate forced to walk around holding his own genitals); *Silvagnoli v. Fischer*, 2010 WL 1063849 at * 14 (N.D.N.Y. Mar.1, 2010) (guard alleged to have attempted to grab inmate's groin area); *White v. Bergenstock*, 2009 WL 4544390 at * 4 (N.D.N.Y. Nov.25, 2009) (guard told inmate to show him his penis if he wanted extra food).

*Id.*; doc. 15 at 5-6. Moreover, he complains primarily about a single, non-violent incident that in no way resembles "[c]ases where the injury requirement has been met." *Id.*; *see also, e.g., Joseph v. Fed. Bureau of Prisons*, 232 F.3d 901 (10th Cir. 2000) (unpublished) (no Eighth Amendment violation where prison official touched inmate several times in a suggestive manner and exposed her breasts to inmate); *Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (touching of inmate's buttocks by prison employees, although inappropriate and later sanctioned by prison, did not violate Eighth Amendment); *Satcher v. Thomas*, 2015 WL 3396063 at * 4 (N.D. Ala. July 10, 2014) (no cruel and unusual punishment where male prison guard "put his hands Plaintiff's pants and squeezed his penis, then put his hands down the back of his pants and squeezed his buttocks"); *Torres v. Casteel*, 2010 WL 3194902 at * 7 (S.D. Fla. Aug. 9, 2010) ("Defendant Casteel's one-time rectal examination, [even if viewed as sexual assault and] even if the examination itself involved more than one probing, was not objectively harmful enough to establish an Eighth Amendment violation."). In other words, plaintiff's sexual assault allegations fail to rise to an Eighth Amendment violation.

One of defendant Manker's actions unrelated to the sexual nature of the assault, however, is another matter. Owens alleges that Manker, for no legitimate reason, "choked Mr. Owens while he was in handcuffs to a point where Mr. Owens beg[a]n to black out" and then forced him to get naked in front of Prince and Birddell. Doc. 15 at 6. That rings the excessive force bell with gusto, for only in an alternate universe could Manker's actions, at least according to Owens' version of events, have anything to do with maintaining or restoring discipline. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (the "core judicial inquiry [for excessive force claims] is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). Owens thus states an Eighth Amendment claim against Manker.

Finally, Owens also states a retaliation claim for a violation of his "First Amendment rights to free speech and to petition the government for redress of grievances." *Boxer X*, 437 F.3d at 1112. "[W]hen a prisoner is punished for filing a grievance concerning the conditions of his imprisonment," those rights are implicated. *Id.* Owens expressly claims that Koon "told Mr. Owens that he was going to insure that Mr. Owens

would die in prison because Mr. Owens filed his complaint of sexual abuse." Doc. 15 at 8. Moreover, he alleges that three days after he first complained about the incident with Prince, and, importantly, because of that complaint, Birddell stripped him naked again and placed him in segregation for sexually assaulting *her*. *Id.* at 7. Under any construction, much less the liberal one afforded *pro se* complaints, *see Wilkerson v. Georgia*, 2015 WL 4279334 at * 2 (11th Cir. July 16, 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), those allegations state a retaliation claim against Birddell and Koon. *See Boxer*, 437 F.3d at 1112.

## III. CONCLUSION

The Court thus greenlights plaintiff's lawsuit on the following claims: (1) a right to privacy claim against Prince, Birddell, and Manker; (2) an excessive force claim against Manker; and (3) a retaliation claim against Birddell and Koon. Because Owens proceeds IFP, service will be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). Accordingly, the Clerk is **DIRECTED** to forward a copy of plaintiff's amended complaint (doc. 15) and this Order to the Marshal for service upon all defendants. In most cases, the Marshal will first mail a copy of

the complaint and its amendment to a defendant by first-class mail and request that each defendant waive formal service of the summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Defendants have a duty to avoid unnecessary costs of serving the summons, and if they fail to comply with the waiver request, they must bear the costs of personal service unless good cause can be shown. Fed. R. Civ. P. 4(d). A within-district defendant who timely returns the waiver is not required to answer the complaint until thirty days after the date that the Marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**SO ORDERED** this 2nd day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA