# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| DANTONIUS M. OWENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. CV414-212 |
| BARBARA PRINCE, GLENDORA ) | |
| BIRDDELL, LAWRENCE MANKER, ) | |
| and JACK KOON, ) | |
| ) | |
| Defendants. ) | |

# **REPORT AND RECOMMENDATION**

After preliminary screening under 28 U.S.C. § 1915A, the Court ordered responses to Dantonius Owens' 42 U.S.C. § 1983 Complaint. Docs. 16, 24. Defendants then moved to dismiss for lack of exhaustion of administrative remedies (doc. 26) and to stay discovery pending resolution of that motion. Doc. 27.

## I. BACKGROUND

From the Court's § 1915A Order, which reproduced plaintiff's allegations in raw, unedited form:[1]

---

[1] At the motion to dismiss stage, as on preliminary review, the Court accepts as true the allegations in Owens' Complaint. *See Smith v. Owens*, 625 F. App'x 924, 926 (11th

Owens claims that "[o]n December 16, 2009, at Coastal [State Prison] . . . Officer Barbara Prince . . . instructed Mr. Owens to allow her to search him." Doc. 15 at 5. Owens notified Sgt. Birddell because he "had already filed a complaint" against Prince. Birddell instructed Owens to allow Prince to search him and Owens complied. . . .

> Prince started her pat search with rubbing up Mr. Owens thigh to his privet area. She then grabbed a handful of Mr. Owens privet, and continued to caress Mr. Owens genatal area until Mr. Owens became very uncomfortable. Mr. Owens asked Officer Prince to stop and then backed away from Officer Prince on going touching of his genatals.
>
> Officer Prince . . . then called Sgt. Birddell over telling her how Mr. Owens won't let her touch him. Sgt. Birddell placed Mr. Owens in handcuffs. Officer Prince and Sgt. Birddell escorted Mr. Owens to the isolation building. . . . Doing the time Mr. Owens was being escorted to isolation Sgt. Birddell and Officer Prince called Mr. Owens gay and made comments as to Mr. Owens thinks he's to damn good to be touched.
>
> When Mr. Owens got to [isolation], Lt. Lawrence Manker was standing there. . . . Lt. Manker joined in calling Mr. Owens gay and stated he was going to teach Mr. Owens a lesson. . . . Lt. Manker [then] choked Mr. Owens while he was in handcuffs to a point where Mr. Owens begin to blackout. Lt. Manker then forced Mr. Owens to get naked in front of Sgt. Birddell and Officer Prince. . . . Mr. Owens was then forced to bend over and grab his butt and spread it wide open. He was told to hold it that way while Lt. Manker, Sgt. Birddell, and Officer Prince look onto him making jokes. Once they were done, Lt. Manker

---

Cir. 2015) (on § 1915A review, courts "view the complaint in the light most favorable to the plaintiff, accepting all of the plaintiff's well-pleaded facts as true") (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1056–57 (11th Cir. 2007)).

>     picked up Mr. Owens clothes and took them with him. Mr. Owens was forced to be naked until the next shift change.
>
> *Id.* at 6.
>
> Three days later [December 19, 2009], after Owens filed a formal complaint against the officers, Birddell entered his building and verbally threatened Owens. *Id.* at 7. "She took Mr. Owens into the shower area of the dorm and made him get naked again.... Once she was done stripping Mr. Owens, she placed him in handcuffs and escorted" him to segregation, ostensibly because Owens sexually assaulted Birddell and two officers assisting her.

*Owens v. Prince*, 2015 WL 5168474 at * 1 (S.D. Ga. Sept. 2, 2015).

As alluded to above, on December 17, 2009, "Mr. Owens filed a complaint of sexual abuse with PRLA.[2] Mr. Owens was talked to by Coastal State Prison counselor Ms. White concerning his complaint. . . . Mr. Owens was informed that an investigation of his complaint would be done." Doc. 15 at 6-7 (footnote added). Owens later attended a disciplinary hearing on January 13, 2010. *Id.* at 7. None of the officers involved (the defendants here) wanted to write a statement "as required for filing a disciplinary report," despite the investigative reporter acknowledging that Owens' story "was true." *Id.* After sending Owens

---

[2] It's unclear whether Owens meant the PLRA (the Prison Litigation Reform Act), the PREA (the Prison Rape Elimination Act, discussed below), or PRLA, in which case the Court cannot divine the meaning of his acronym.

3

out of the room, prison employees then watched a videotape of the incident. *Id.* at 8. When he returned, the hearing officer informed him that "just for the sake of everybody we going [sic] to say Mr. Owens brought all this on to himself," and that if he wanted to get out of lockdown he would agree. *Id.*

Thereafter "Owens 'continued to push for some justice.' *Id.* In response, 'the warden of Coastal [Jack Koon] . . . told Mr. Owens that he was going to insure that Mr. Owens would die in prison because Mr. Owens filed his complaint of sexual abuse.' *Id.* After being transferred to the Chatham County jail for a court date, Owens complained to that facility's investigator about his treatment at Coastal. *Id.*" *Owens*, 2015 WL 5168474 at * 2. He gave a written statement and recorded interview and was informed that a full investigation "would be done." Doc. 15 at 8. Owens says that investigation never happened. *Id.* at 9. Instead, upon his return to state prison, he "was placed on lockdown and was physical[ly] assaulted . . . for filing his complaint to the Chatham County Jail." *Id.*

Owens claims to have filed "over eight (8) complaints concerning the harassment and assault against him," yet allegedly nothing has been

4

done. Doc. 15 at 9. Some of those complaints consisted of inquiries by his family regarding progress into investigating his sexual assault complaint. *See, e.g.*, doc. 30 at 13. Those began in at least February 2011, and occurred again in April 2011, May 2011, and May 2013. *Id.* at 13-16. In between family inquiries, on May 10, 2012, Owens consented to a mental health "evaluation following allegation of suspected sexual abuse." Doc. 30 at 17.

Owens' Complaint in a April 2014 Middle District of Georgia case, in which he sought to have the court order the issuance of arrest warrants against Briddell, Manker, and Prince, provides more detail. There he said that he complained thirteen times between December 17, 2009 and March 29, 2014, including by filing "a complaint to the Ombudsman department." *Owens v. Head*, No. 5:14-cv-164, doc. 1 at 3 (M.D. Ga. April 28, 2014) ("*Head*"). Consistent with his allegations in this case, Owens stated that those complaints went unanswered and resulted in reprisals from Warden Koon. *Id.* at 5. Finally, on April 3, 2014, Owens says the PREA mental health counselor told him that "no paperwork complaint, or investigation has ever been filed concerning [his] sexual assault." *Id.* At

no point in either this case or *Head* does Owens allege that he filed an informal grievance, formal grievance, or appealed denials of either.

## II. GOVERNING STANDARDS

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available[3]

---

[3] *See also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016) (§ 1997e(a)'s "edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner").

> An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. As we explained in *Booth* [*v. Churner*], the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' 532 U.S., at 737–738, 121 S.Ct. 1819 [2001] (quoting Webster's Third New International Dictionary 150 (1993)). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.

*Id.* at 1858-59.

> "[T]hree kinds of circumstances [exist] in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. "First," a procedure "is unavailable when . . . it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.*; *see also Turner* [*v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)] ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). And finally, grievance processes need not be exhausted "when prison administrators thwart

6

are exhausted." Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285–86 (11th Cir.1999), *vacated on other grounds by Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc) (footnote added); *see also Jones v. Bock*, 549 U.S. 199, 199–200 (2007) ("There is no question that exhaustion is mandatory under the PLRA.").[4]

PLRA exhaustion also must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines

---

inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

[4] Exhaustion furthers seven policy aims:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998) (quotes omitted); *see also Woodford*, 545 U.S. at 89; *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (PLRA's primary concerns are "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court").

and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id.* at 89–91 (citation omitted). If an inmate files an "untimely or otherwise procedurally defective administrative grievance or appeal," he therefore has not properly exhausted his administrative remedies. *Id.* at 83–84; *see also Lambert v. United States*, 198 F. App'x. 835, 840 (11th Cir. 2006) (proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005).

Exhaustion, however, is an affirmative defense and "defendants bear the burden of proving that the plaintiff has failed to exhaust." *Turner*, 541 F.3d at 1082 (quoting *Jones*, 549 U.S. at 216). "[T]reated as a matter in abatement," exhaustion defenses are "like a defense for lack of jurisdiction." *Id.* Deciding them thus involves a "two-step process." *Id.*

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that

light, the defendant is entitled to have the complaint dismissed for
failure to exhaust administrative remedies, it must be dismissed.

* * *

If the complaint is not subject to dismissal at the first step, where
the plaintiff's allegations are assumed to be true, the court then
proceeds to make specific findings in order to resolve the disputed
factual issues related to exhaustion. . . . Once the court makes
findings on the disputed issues of fact, it then decides whether under
those findings the prisoner has exhausted his available
administrative remedies.

*Id.* at 1082-83 (cites omitted); *see also Bryant v. Rich*, 530 F.3d 1368, 1376-77 (11th Cir. 2008) ("[W]here a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue . . . and that the court has a broad discretion as to the method to be used in resolving the factual dispute.").

## III. ANALYSIS

Defendants primarily argue that Owens failed to properly exhaust available administrative remedies. Doc. 26-1 at 7-11. Citing to his grievance record, they say he originally grieved the alleged sexual assault on May 20, 2013, well beyond the ten day window for filing a grievance after a grievable incident (not to mention beyond the two year statute of limitations for § 1983 claims; more on that later). Doc. 26-1 at 9. That,

says defendants, isn't *proper* exhaustion and thus precludes Owens' bodily privacy claim. *Id.* Regarding his retaliation and excessive force claims, defendants contend that Owens to this day has never submitted a grievance about those incidents and thus failed to exhaust. *Id.* at 8.

Owens points out that the Georgia DOC has a "standard operating procedure (SOP) . . . that informs inmates . . . on how to report or handle a sexual assault/harassment claim." Doc. 30 at 3. That SOP, promulgated pursuant to PREA,[5] provides "several ways that someone can report a

---

[5] Enacted in 2003, to, among other things, "make the prevention of prison rape a top priority in each prison system; []develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape . . . [and] increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape," 42 U.S.C. § 15602, PREA provides no private right of action for inmates who suffer sexual assault. *See Jones v. Schofield*, 2010 WL 786585 at * 3 (M.D. Ga. Mar. 4, 2010) ("PREA does not confer a private right of action to individuals."). Instead, the law funds studies of prison rape and requires penal institutions to bolster policies and procedures for detecting, reporting, and responding to prison sexual assaults. *See Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("PREA was enacted in 2003 to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape.") (quotes omitted).

The Georgia Department of Corrections (GDOC) promulgated SOP IIA21-0001 to support PREA's goals. *See* doc. 30 at 19. It provides advice on how to avoid sexual assault, how to preserve evidence post-assault, and informs inmates that they can report sexual assaults (1) in writing (either by a "sick call, counselor request form, grievance, or on any kind of paper"); (2) in person to any staff member, including chaplains, mental health staff, and the "PREA coordinator;" (3) by declaring a medical emergency; and (4) by calling a special hotline from inmate phones. *Id.* After an inmate reports "an allegation in good faith, the reporter has a right to be free from

sexual assault." *Id.* The grievance procedure, he notes, "is just one of the many ways listed." *Id.*

Pointing to his own declarations and emails from a relative, Owens says he and his family "notified prison staff and filed [] complaint[s] with the [DOC]." Doc. 30 at 4. Doing so, he contends, satisfied the DOC's PREA policy and, in turn, the exhaustion requirement as to his sexual assault claim. *Id.*; *id.* at 6 ("The PLRA provides that no action shall be brought by any prisoner until his/her administrative remedies that are available are exhausted. The PLRA does *not* say any prisoner wishing to seek action must use one way only to exhaust their administrative remedies.").

Turning to his retaliation and excessive force claims, Owens argues those are derivative of his sexual assault allegation and thus properly included in his PREA complaints. Doc. 30 at 5. Per the DOC's own policy, he says, inmates may "allege all the allegations and claims" related to a sexual assault incident "in one complaint instead of individual

---

retaliation. If the allegation is unfounded, disciplinary action will be taken. If a PREA allegation is substantiated, it is a criminal act that merits prosecution." *Id.* Nowhere does the PREA policy assert that its procedures comprise the only avenue by which inmates can complain about sexual assault. Indeed, it explicitly recognizes that the grievance system may be utilized to report such incidents. Doc. 30 at 18-19.

[complaints] as the Georgia Grievance Process would have an inmate do." *Id.* at 6. He did that and thus contends he exhausted those claims as well. *Id.*

Even taking all of Owens' allegations as true,[6] he still failed to exhaust available administrative remedies. Again, Owens contends that his PREA complaints satisfied § 1997e(a). Doc. 30 at 6. Several courts have held that PREA itself does not create an alternative remedial scheme or abrogate PLRA's exhaustion requirement.[7] But none have decided the related but distinct question of whether a state PREA procedure and an inmate's subsequent proper utilization of it can satisfy § 1997e(a) when an un-utilized prison grievance procedure also exists.

---

[6] Recall that *Turner* step one instructs courts to do just that. *See Turner*, 541 F.3d at 1082.

[7] *See, e.g., Omaro*, 68 F. Supp. 3d at 364-65 (PREA does not excuse an inmate's failure to exhaust his administrative remedies with respect to a claim of sexual misconduct."); *John Doe 1 v. Mich. Dep't of Corr.*, No. 13-14356, 2015 WL 1600772, at *2 (E.D. Mich. Apr. 9, 2015) ("[T]he PLRA's exhaustion requirement is not superseded or otherwise altered by the PREA."); *Lamb v. Franke*, 2013 WL 638836 at * 2 (D. Or. Feb. 14, 2013) ("PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement."); *Myers v. Grubb*, 2013 WL 352194 at * 1 (D. Mont. Jan. 29, 2013) ("PREA[] does not impose a different administrative remedy scheme or supersede PLRA's requirement that a prisoner exhaust all available administrative remedies before filing suit.").

Even assuming those issues were resolved in plaintiff's favor, his claims nevertheless fail. PLRA requires exhaustion of "such administrative remedies as are *available*." 42 U.S.C. § 1997e(a) (emphasis added); *Ross*, 136 S. Ct. at 1856 (§ 1997e(a)'s "edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner"). And the PREA regulations mandating the procedures Owens claims to have invoked only became effective on June 20, 2012 -- over two years after Owens' alleged sexual assault.[8] *See* 28 C.F.R. § 115. Put differently, the procedures Owens claims satisfy § 1997e(a) only came into existence years after his alleged sexual assault. Hence, it cannot assist Owens here.

The record reflects that the only administrative remedy available to Owens in December 2009 was SOP IIB05-0001's grievance procedure. Doc. 26-3. That required prisoners to complete a three step process, consisting of an informal grievance (which had to be filed within 10 days of an incident), a formal grievance, and an appeal, before filing suit in

---

[8] Owens' proffered PREA documents only reinforce this conclusion. *See* doc. 30 at 19 (PREA policy effective date of July 15, 2013); *id.* at 18 (PREA letter from Calhoun State Prison Deputy Warden dated January 1, 2016).

federal court. *See Toenninges v. Ga. Dep't of Corrections*, 600 F. App'x 645, 647 (11th Cir. 2015) (citing Ga. Dep't of Corr. SOP IIB05–001 § VI). Importantly, it allowed inmates to grieve "[a]ny condition, policy, or procedure, action or lack thereof that affects inmates and is in the control of the [GDOC]." Doc. 26-3 at 3. Although certain matters qualified as "non-grievable," "any grievance alleging retaliation, misconduct, or harassment [was] grievable regardless of the form." *Id.*

Owens failed to file any grievance relating to his alleged sexual assault until May 20, 2013, over two years after it occurred, *see* doc. 26-2 at 3-4; doc. 26-4 at 1, despite his clear knowledge of how to use the grievance process, having invoked it many times over the years (sometimes quite successfully). *See* doc. 26-4. That failure to timely grieve the assault (not to mention Koon's alleged retaliation, and Manker's alleged use of excessive force) constitutes improper exhaustion, *see Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines...."), and thus fails to satisfy § 1997e(a). *See Johnson*, 418 F.3d at 1157 (inmates who untimely file grievances or simply spurn the administrative process until it is no longer available fail

to satisfy PLRA's exhaustion requirement). That failure, in turn, precludes this action.

A failure to exhaust typically justifies dismissal *without* prejudice. *See Howard v. Kraus*, 2016 WL 471387 at * 2 (11th Cir. Feb. 8, 2016) ("[D]ismissal for failure to exhaust administrative remedies is not an adjudication on the merits. . . ."); *Prickett v. Lawson*, 2008 WL 5046063 at * 3 (S.D. Ga. Nov. 24, 2008) ("Normally, the failure to exhaust warrants dismissal without prejudice."). Owens' untimely filing of this case,[9]

---

[9] "Federal courts look to state law to determine the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir.1996). In Georgia, the applicable statute of limitations for personal injury actions is two years. O.C.G.A. § 9–3–33." *Hammonds v. Mark Shellnut, LLC*, 399 F. App'x 540, 540 (11th Cir. 2010). Owens filed suit on September 25, 2014 (doc. 1), almost five years after the sexual assault that allegedly occurred on December 16, 2009. Absent some excuse for a late filing, then, the two years Owens had to file a § 1983 complaint already had expired.

On preliminary review, the Court, construing the Complaint in the light most favorable to Owens, found that he alleged sufficient facts to suggest equitable tolling of the limitations period. Doc. 16 at 6 n. 3 (tolling "arguably . . . occurs if," as Owens appeared to allege, "the state, by purposefully ignoring or delaying decision on administrative applications for redress, causes the limitations period to expire"). In the brighter light of defendants' motion to dismiss facts, however, tolling is inappropriate. Owens never tried to file a grievance (he instead tried to complain via other avenues that PREA later legitimized) until two and half years after the incident. *See* doc. 26-2 at 3-4. Even if prison officials then dragged their feet in addressing his grievance (nothing beyond Owens' allegations suggests they did), the time for him to grieve the assault had already passed. Put differently, by the time he invoked available administrative remedies, no limitations period was left to toll. He therefore failed to timely file his Complaint.

however, moves it squarely into the "with prejudice" camp. *See Pinkston v. Williams*, 2015 WL 4254075 at * 3 (M.D. Ala. July 13, 2015) ("The administrative remedy provided by the defendants is no longer available to [Owens]. Under these circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n. 1; *Johnson*, 418 F.3d at 1157.").

## IV. CONCLUSION

Accordingly, Dantonius Owens' Complaint should be **DISMISSED WITH PREJUDICE**.[10] Given that recommendation, defendants' motion to stay is **GRANTED**. Doc. 27.

**SO REPORTED AND RECOMMENDED**, this  29th  day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[10] Defendants also argue that Owens' Complaint should be dismissed for abuse of process because he failed to disclose previous lawsuits on the form § 1983 complaint he used. Doc. 26-1 at 16. Whether true or not, his failure to exhaust and untimely complaint filing, and the resulting with prejudice dismissal recommendation, moot any need to address that contention. Nevertheless, Owens must take care, should he file any future § 1983 claims, to fully and completely fill out the form complaint. Failure to do so may result in sanctions, including dismissal. *See, e.g., Shelton v. Rohrs*, 406 F. App'x 340, 341 (11th Cir. 2010).